
FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 0 5 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TREVIS GLASGOW,

                Plaintiff,

– against –

RICHARD BEARY,

                Defendant.

**MEMORANDUM & ORDER**

12-CV-3055



**Appearances:**

For Plaintiff:    Garnett H. Sullivan
                    Law Offices of Garnett H. Sullivan
                    South Hempstead, NY

For Defendant:  Anthony M. DiSenso, Brenda Elaine Cooke, James F. Horton
                    New York City Law Department, Office of the Corporation Counsel
                    New York, NY

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.      Introduction ............................................................................................................................2

II.    Facts........................................................................................................................................2

III.   Law.........................................................................................................................................4

IV.   Application of Law to Facts ...................................................................................................5

     A.     Collateral Estoppel ........................................................................................................5

         1.    Fourth Amendment and Non-Criminal Offenses .....................................................5

         2.    Traffic Court Adjudication .......................................................................................9

     B.     *Heck* Doctrine ............................................................................................................11

V.    Conclusion............................................................................................................................12



I. **Introduction**

Trevis Glasgow sues Richard Beary, a New York Police Department officer, asserting federal and state law claims stemming from a January 5, 2012 traffic stop. Plaintiff claims that defendant arrested him without probable cause, in violation of the Fourth Amendment to the United States Constitution and New York common law; that defendant was motivated, at least in part, by Glasgow's race, ethnicity, or national origin, in violation of the Fourteenth Amendment to the United States Constitution; and that defendant's negligence resulted in injuries to plaintiff's wrist.

Defendant moves for summary judgment on all claims. Summary judgment on plaintiff's false arrest claim is denied. Defendant's motions for summary judgment on the remaining claims were denied orally at the February 18, 2014 hearing, for reasons stated on the record. *See* Hr'g Tr. 16:24—18:24, 25:23—28:5, Feb. 18, 2014.

II. **Facts**

On the morning of January 5, 2012, plaintiff was driving a fifteen-passenger bus operated by the Queens Parents Resource Center when he was pulled over by defendant. Moments before, plaintiff had turned left onto Woodhaven Boulevard (southbound) from Atlantic Avenue (westbound). According to defendant, plaintiff improperly initiated his turn from the middle lane on Atlantic Avenue rather than the left-hand turning lane, as required by New York's Vehicle and Traffic Law. Plaintiff maintains that he properly turned from Atlantic Avenue's dedicated left-hand turning lane.

The parties offer contrasting characterizations of their ensuing conversation. By defendant's account, plaintiff was argumentative and refused several requests to produce

his driver's license and registration, prolonging the traffic stop and delaying passing motorists.

Plaintiff insists that he was courteous throughout the exchange, and that defendant took umbrage with plaintiff's simple repeated query as to the basis for the stop. He also claims that defendant became incensed when he accidently withdrew his bus permit, a credential that looks similar to a driver's license, rather than the requested license. A Guyanese immigrant who speaks with a heavy accent, plaintiff reports that defendant responded: "You are Jamaican, you want to give people a hard time."

Eventually plaintiff handed over the requested documents. Their stories differed as to the closing of the bus's driver side door. Defendant claims he put his hand on the door to prevent its opening and plaintiff's exiting the bus. Plaintiff asserts that defendant slammed shut the bus's door, which had been opened during the exchange, injuring plaintiff's wrist, causing plaintiff to scream out in pain.

Once plaintiff began complaining of his injury—later diagnosed as a ligament sprain—defendant called additional units to respond to the scene. Defendant then arrested plaintiff for obstructing governmental administration, N.Y. Penal Law § 195.05, disorderly conduct, N.Y. Penal Law § 240.20(5), and making an improper turn, N.Y. Vehicle & Traffic Law § 1163(a).

During the confrontation, according to plaintiff, defendant "ke[pt] patting [him] down, saying 'Where is the ganja [marijuana]? I know all Jamaicans smoke.'" Defendant denies the allegation.

Plaintiff was transported to the precinct stationhouse and then to a hospital, where he received treatment for his wrist. He was arraigned early the next day.

The obstructing governmental administration and disorderly conduct charges were adjourned in contemplation of dismissal and subsequently dismissed. In traffic court, plaintiff was convicted by an administrative law judge of a traffic violation, making an illegal left turn.

## III. Law

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights under color of law. 42 U.S.C. § 1983. "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state . . . subjects any [person in] the United States . . . to the deprivation of any rights, privileges, or immunities secured by the constitution, shall be liable to the party injured[.]" *Id.*

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, provides: "The right of people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. An arrest made without probable cause violates an individual's Fourth Amendment right to be free from unreasonable seizures. *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999). The existence of probable cause to arrest for some criminal offense—even an offense other than the one identified by the arresting officer at the time of arrest—defeats a false arrest Fourth Amendment claim. *Devenpeck v. Alford*, 543 U.S. 146, 154 (2004).

Probable cause exists "when an officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting

4

*Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996)). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *Maryland v. Pringle,* 540 U.S. 366, 371 (2003).

## IV. Application of Law to Facts

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Defendant contends that he is entitled to summary judgment on plaintiff's false arrest claims for two reasons.

Defendant's first argument, based on collateral estoppel, has two parts: (a) probable cause for a violation of the traffic code renders an arrest "reasonable" within the meaning of the Fourth Amendment and (b) the administrative law judge's determination that plaintiff made an illegal left turn conclusively establishes that defendant witnessed plaintiff violate the traffic code. The existence of probable cause to arrest for the disorderly conduct and obstructing governmental administration offenses hinges on unresolved factual disputes, and is not at issue in defendant's summary judgment motion.

The second basis for defendant's motion is that the Supreme Court's decision in *Heck v. Humphrey* bars the instant suit.

### A. Collateral Estoppel

#### 1. Fourth Amendment and Non-Criminal Offenses

Defendant first argues that the Fourth Amendment permits a full custodial arrest where an officer has probable cause for a traffic offense—*e.g.*, making an improper left turn.

At first blush, *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), and *Virginia v. Moore*, 553 U.S. 164 (2008) appear to clearly resolve the question in defendant's favor. In *Atwater*, the Court held that the Fourth Amendment does not forbid a warrantless arrest for a minor criminal offense such as a misdemeanor seatbelt violation punishable only by a fine. 532 U.S. at 323. The Court announced a more expansive rule in *Moore*, concluding "that warrantless arrests for crimes committed in the presence of an arresting officer are [always] reasonable under the Constitution," even if state law prohibits such arrests. 532 U.S. at 178. Defendant urges that these cases stand for the proposition that a full custodial arrest for a violation of the New York Vehicle and Traffic Law comports with the Fourth Amendment, provided the arresting officer has probable cause.

This interpretation of *Atwater* and *Moore* is too broad. Both of these cases involved arrests for criminal offenses defined as misdemeanors by state law. *Moore*, 532 U.S. at 176. In New York, a traffic infraction is "not a crime[,] and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment." N.Y. Vehicle & Traffic Law § 155; *People v. Letterio*, 16 N.Y.2d 307, 312 (N.Y. 1965) (Bergan, J., concurring) ("The basic concept of the traffic infraction is that a traffic violation is not a crime and the violator not a criminal. . . . [I]t [is] unwise to treat traffic offenders as we treat persons charged with crime.). Nevertheless, the New York Vehicle and Traffic Law specifically permits an arrest for traffic offenses, including that of making an illegal left turn. N.Y. Vehicle & Traffic Law § 155 ("For purposes of arrest

without a warrant, pursuant to article one hundred forty of the criminal procedure law ["Arrest without a warrant"], a traffic infraction shall be deemed an offense.").

At least two federal district courts have rejected the applicability of *Moore* and *Atwater* in recent cases presenting the same issue. *Smith v. Kelly*, 2012 WL 1605123, No. C11-623 (W.D.Wash. 2012) ("The *Moore* Court held that the Fourth Amendment does not prohibit the arrest of someone suspected of a 'minor *crime*,' even if state law prohibits arrest. The *Moore* Court said nothing about police authority to arrest someone for conduct that is not a crime at all.") (emphasis in original); *Bostic v. Rodriguez*, 667 F. Supp. 2d 591, 609 (E.D.N.C. 2009) ("Both *Moore* and *Atwater* involved misdemeanor crimes under the applicable state law. Here, under North Carolina law, the seat belt infraction 'is a noncriminal violation of law not punishable by imprisonment.'") (citing N.C. Gen. Stat. § 14-3.1).

The constitutionality of a full custodial arrest based only on probable cause for a non-criminal traffic infraction is unclear and dubious. Consider that, once arrested, an individual may be handcuffed, searched, and divested of property, *Atwater*, 532 U.S. at 354, kept in a jail cell for forty-eight hours without encountering a judicial officer, *City of Riverside v. McLaughlin*, 500 U.S. 44 (1991), and forced to undergo a visual inspection of genitals, *Florence v. Board of Chosen Freeholders*, 132 S. Ct. 1510 (2012), all without offending the Fourth Amendment. *See also Farmer v. Brennan*, 511 U.S. 825, 858 (1994) (Thomas, J., concurring in the judgment) ("Prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another. Regrettably, some level of brutality and sexual aggression among [prisoners] is inevitable no matter what the guards do . . . .") (citation and quotation marks omitted).

If defendant's view is accepted, any motorist who fails to signal a turn at least one hundred feet before an intersection, N.Y. Vehicle & Traffic Law § 1163(b), any bicyclist who lacks a bell "capable of giving a signal audible for a distance of at least one hundred feet," *id.* § 1236(b), and any non-blind pedestrian employing a red-tipped cane, *id* § 1153(b), is subject to arrest with ensuing indignities. It is hard to believe "that the proud men who wrote the charter of our liberties" would countenance such searches and seizures where no criminal offense is alleged to have been committed. *Cf. Maryland v. King*, 133 S. Ct. 1958 (2013) (Scalia, J., dissenting).

That said, the limited protective impact of the Fourth Amendment advanced by defendant is arguably consistent with the Supreme Court's recent search and seizure jurisprudence. *See* Julian Simcock, Note, *Florence, Atwater, and the Erosion of Fourth Amendment Protections for Arrestees*, 65 STAN. L. REV. 599 (2013); Teresa A. Miller, *Bright Lines, Black Bodies: The Florence Strip Search Case and its Dire Repercussions*, 46 AKRON L. REV. 433 (2013). Even if an arrest for a non-criminal traffic infraction does violate the Fourth Amendment, a reasonable New York police officer had reason to believe that such an arrest was lawful. This is particularly true in light of a portion of the traffic code that purports to authorize New York police officers to make warrantless arrests for traffic violations, notwithstanding the non-criminal classification of such offenses. *But see Moore*, 553 U.S. at 176 ("[L]inking Fourth Amendment protections to state [procedural] law would cause them to 'vary from place to place and from time to time' . . .") (citation omitted), *United States v. Bernacet*, 724 F.3d 269, 277 (2d Cir. 2013) ("The legality of [defendant]'s arrest at New York law therefore does not end, *or even inform*, the constitutional inquiry") (emphasis added).

Given the uncertain status of the law, it cannot be said that plaintiff's Fourth Amendment right to be free from a full custodial arrest for a non-criminal traffic infraction was "clearly established" in January 2012, when defendant turned off Atlantic Avenue. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Before officers are subjected to suit under Section 1983, they must be "on notice [that] their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

If defendant arrested plaintiff after observing him commit a violation of the New York traffic code, he would be entitled to qualified immunity on plaintiff's Fourth Amendment claim. *Id.* An issue of fact is posed requiring trial on this issue.

### 2. Traffic Court Adjudication

Defendant argues that the March 6, 2013 administrative hearing, at which plaintiff was adjudged to have committed an unlawful left turn, conclusively establishes that defendant witnessed plaintiff committing a violation of the New York traffic code.

This argument fails because the *res judicata* effect of state-court decisions in Section 1983 actions is a matter of state law. *Heck v. Humphrey*, 512 U.S. 477, 480 n.2 (1994). Under New York law traffic infraction adjudications are given short shrift for collateral estoppel purposes.

> Collateral estoppel effect is denied to traffic convictions and determinations in small claims action . . . . [T]hese minor suits are illustrative of the type of determination which, under accepted common-law principle, should not be held conclusive in later cases. Because of the relative insignificance of the charge, the defendant had no constitutional or statutory right to a jury trial as he would have in a true criminal prosecution, or even in the subsequently initiated civil action for damages. Nor could he reasonably expect or be expected to defend with the same vigor. The brisk, often informal, way in which these matters must be tried, as well as the relative insignificance of the outcome, afford the party neither opportunity nor incentive to litigate thoroughly or as thoroughly as she might if more were at stake.

*Gilberg v. Barbieri*, 53 N.Y.2d 285, 293 (N.Y. 1981) (citations omitted). Plaintiff's traffic court adjudication has no preclusive effect here. *But see Zanghi v. Village of Old Brookville*, 752 F.2d 42, 46-47 (2d Cir. 1985) (holding, without discussion of *Gilberg*, that *res judicata* applies to facts determined in New York traffic court proceeding).

Even if New York traffic court adjudications are entitled to some preclusive effect in a later civil action, here there is not a precise "identity of issues" in the former and latter matters, required for application of collateral estoppel. *Wilder v. Thomas*, 854 F.2d 605, 617 (2d Cir. 1998) ("In New York collateral estoppel is a flexible doctrine which can never be rigidly or mechanically applied. Nevertheless, the requirement of identity of issues, unlike the requirement of identity of parties, is an absolute requirement.") (citations and quotation marks omitted). In traffic court, the relevant question is whether plaintiff committed a violation of the traffic code; in the Section 1983 litigation, the relevant question is whether an objectively reasonable officer, knowing the facts known to defendant at the time of arrest, would be warranted in the belief that plaintiff had committed a crime. *Escalera*, 361 F.3d at 743; *Pringle*, 540 U.S. at 37. The absence of precise identity bars the application of collateral estoppel here.

Barring plaintiff from contesting the circumstances surrounding his arrest in this civil rights lawsuit would also raise serious constitutional concerns. Such an approach would allow an administrative law judge to usurp the important fact-finding function that the Seventh Amendment properly vests with a jury. *But see Allen v. McCurry*, 449 U.S. 90 (1980) (holding issue preclusion bars Section 1983 plaintiff from relitigating Fourth Amendment issue decided in state court criminal proceeding); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) (holding equitable determination can have collateral-estoppel

effect in a subsequent legal action without violating Seventh Amendment). The harried determination of a New York administrative law judge should not foreclose plaintiff's opportunity to vindicate his civil rights in federal court.

B.  *Heck* Doctrine

In the alternative, defendant argues that allowing plaintiff's false arrest claim to proceed would run afoul of the *Heck* doctrine, which "precludes the use of Section 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions." *Poventud v. City of New York*, No. 12-1011-CV, 2014 WL 182313 (2d Cir. Jan. 16, 2014); *Heck v. Humphrey*, 512 U.S. 477 (1994). This argument fails for at least two reasons.

Plaintiff's Section 1983 suit does not call into question a *criminal* conviction. Rather, plaintiff was found to have committed a violation of the New York Vehicle and Traffic Law, which state law defines as "not a crime." N.Y. Vehicle & Traffic Law § 155. *Heck* does not sweep so broadly. *See Heck*, 512 U.S. at 487 ("But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding *criminal* judgment against the plaintiff, the action should be allowed to proceed . . . .") (emphasis added).

It remains an open question "whether a plaintiff who challenges his allegedly unconstitutional conviction or incarceration, but is no longer in custody and therefore has no access to *habeas* [relief], has recourse to a federal remedy under Section 1983." *Poventud*, slip op. at *6, n.1. Here, plaintiff was in state custody for less than twenty-four hours and had no meaningful access to *habeas* relief during that time. *Cf. Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) ("Because Leather is not and never was in the

custody of the State [apart from his initial arrest], he . . . has no remedy in habeas corpus. Having escaped the jaws of *Heck*, Leather should therefore be permitted to pursue his § 1983 claim in the district court unless principles of res judicata or collateral estoppel preclude his suit."). Unlike a Section 1983 claim brought by a plaintiff still in state custody, this case does not "lie[] at the intersection of the two most fertile sources of federal-court prisoner litigation—the Civil Rights Act of 1871 . . . and the federal habeas corpus statute, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 480.

The *Heck* doctrine barring a Section 1983 claim does not extend to plaintiff's false arrest suit. *Cf. Fifield v. Barrancotta*, 353 Fed. App'x 479, 480-81 (2d Cir. 2009) ("Fourth Amendment claims for unlawful arrest . . . do not ordinarily fall within the *Heck* rule, since a finding for the plaintiff would not necessarily demonstrate the invalidity of any outstanding criminal judgment against the plaintiff."); *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) ("A wrongful arrest claim, like many Fourth Amendment claims, does not inevitably undermine a conviction because a plaintiff can wage a successful wrongful arrest claim and still have a perfectly valid conviction.") (quoting *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997)).

## V. Conclusion

Defendant's motion for summary judgment is denied.

SO ORDERED

Jack B. Weinstein
Senior United States District Judge

Dated: March 5, 2014
Brooklyn, New York